UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

ALDINAY MENDOZA,

                                Petitioner,

                                v.                                9:04-cv-1270
                                                                         (LEK)

DAVID MILLER, Superintendent, Eastern New
York Correctional Facility

                                Respondent.
_____

APPEARANCES                                    OF COUNSEL:

For the Petitioner:

ALDINAY MENDOZA
00-A-1298
Woodbourne Correctional Facility
99 Prison Road
Woodbourne, NY 12788

For the Respondent:

HON. ANDREW M. CUOMO               ALYSON J. GILL, ESQUIRE
Office of the Attorney General             Ass't Attorney General
120 Broadway
New York, NY 10271

LAWRENCE E. KAHN
U.S. District Judge

**DECISION AND ORDER**

**I. <u>Introduction</u>**

      Petitioner Aldinay Mendoza ("Mendoza" or "Petitioner") is currently an inmate in the custody of the New York State Department of Correctional Services at Woodbourne Correctional Facility.  He was convicted on March 23, 2000 of third degree criminal possession of a controlled substance (three counts)  (N.Y. PENAL LAW § 220.16)) after a jury trial in Schenectady County

and is presently serving an aggregate sentence of eight and one-third to twenty-five years in prison. Pet. at 1 (Dkt. No. 1); Respondent's Memorandum of Law ("Resp't Mem."), at 1, 3, 4 (Dkt. No. 6).

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the ground that his sentence is cruel and unusual under the Eighth Amendment of the United States Constitution. Pet. at 4; Attached Memorandum of Law at 3-11. For the reasons that follow, the Petition is **denied**.

## II. Background

### A. Facts

According to the state court records, Mendoza was arrested on July 22, 1999, after he possessed and sold heroin to a police informant on three separate occasions. See People's Appellate Brief at 1-2 (Dkt. No. 29, Ex. B); Resp't Mem. at 2. On each occasion, the informant wore a wire, and police observed her enter and exit Mendoza's home. People's Appellate Brief at 1.

Mendoza was indicted for third degree criminal sale of a controlled substance (three counts), third degree criminal possession of a controlled substance (three counts), and seventh degree criminal possession of a controlled substance (three counts). Id. Petitioner was tried before a jury on the charges in Schenectady County Court. The jury convicted Petitioner on all three counts of criminal possession of a controlled substance and acquitted him of the remaining charges. Petitioner was sentenced on March 23, 2000 to three consecutive indeterminate terms of eight and one-third to twenty-five years in prison. People v. Mendoza, 752 N.Y.S.2d 437 (N.Y. App. Div., 3d Dept. 2002); Resp't Mem. at 2-3.

Mendoza appealed his conviction to the Appellate Division, Third Department, arguing that: (1) the verdict was fatally repugnant because the jury convicted him of third degree criminal possession of a controlled substance but acquitted him of third degree criminal sale of a controlled substance; and (2) the sentence imposed was unduly harsh and severe.  See Appellate Brief at 6-12 (Dkt. No. 29, Ex. A); Resp't Mem. at 3.  The District Attorney opposed that appeal.  Dkt. No. 29, Ex. B.  On December 19, 2002, the Appellate Division modified Mendoza's sentence, ordering the sentences to run concurrently, and otherwise affirmed his conviction.  Mendoza, 752 N.Y.S.2d at 439.  On February 27, 2003, New York's Court of Appeals denied Mendoza's application for leave to appeal.  People v. Mendoza, 787 N.E.2d 1174 (N.Y. 2003).

Mendoza filed a motion to vacate his sentence pursuant to New York's Criminal Procedure Law ("CPL") § 440.20 on March 23, 2004.  Dkt. No. 29, Ex. G.  In the motion, Mendoza argued that, under People v. Broadie, 332 N.E.2d 338 (N.Y. 1975), cert. denied 423 U.S. 950 (1975)[1], his sentence constituted "cruel and inhuman punishment" and should be set aside.  The District Attorney's Office argued that since Mendoza's sentence had been modified by the Appellate Division, and the Court of Appeals denied leave to appeal that decision, Mendoza's motion should be denied.  Dkt. No. 29, Ex. H.  In his reply brief, Mendoza asserted that on direct appeal, he had claimed only that his sentence was harsh and excessive and not that it constituted cruel and unusual punishment.  Id. at Ex. I.

---

[1] Eight defendants in Broadie challenged the constitutionality of drug laws in effect at the time of their convictions that mandated life imprisonment and lifetime parole upon release on the ground that the laws were "so disproportionate as would constitute cruel and unusual punishment" in violation of both New York and the United States Constitution.  Brodie, 332 N.E.2d at 340.  The Court of Appeals rejected these arguments, finding no violation of either Constitution.  Id. at 341-47.

On June 18, 2004, the motion was denied. Dkt. No. 29, Ex. J. The trial court found that the Appellate Division's decision to reduce Mendoza's sentence "signifies the Appellate Court's consideration of the issues raised" by Mendoza in his motion, and further review of the issues was therefore precluded. Id. (citing CPL § 440.20(2)). The court then found that if it were to consider the merits, it would decline to reduce Mendoza's sentence further "in the interest of justice." Id. On August 31, 2004, the Appellate Division, Third Department, denied Mendoza's application for leave to appeal that decision. Dkt. No. 29, Ex. M.

On or about March 29, 2005, Mendoza filed a second motion to vacate his sentence under section 440.20 ("March 2005 Motion"). Dkt. No. 27, Ex. A. In this motion, Mendoza argued that in light of the Rockefeller Drug Law Reform Act ("Reform Act")[2] his sentence was cruel and unusual punishment and it violated his right to due process and equal protection. The District Attorney's Office argued that: (1) the Reform Act did not apply to Mendoza; (2) his claim that the sentence was cruel and unusual was procedurally barred because it was raised and decided in a previous motion; (3) his claim that his sentence violated due process was unsupported; and (4) any equal protection argument was beyond the scope of a section 440.20 motion. Dkt. No. 27, Ex. B. Mendoza filed a reply affidavit on or about June 23, 2005. Id. at Ex. C.

On September 20, 2005, the motion was denied. Dkt. No. 27, Ex. D. The court found that because Mendoza was convicted of three class B felonies before January 13, 2005, the effective date of the Reform Act, "the change in the law does not affect his sentence." Id. at 2. The court further found that Mendoza's cruel and unusual punishment claim had been previously

---

[2] N.Y. PENAL LAW § 70.70, N.Y. Session Laws, 227th Leg,, Chapter 738 (N.Y. 2004) (effective January 13, 2005)

determined on the merits and was therefore barred by CPL § 440.20(3). Id. Finally, the court ruled that there were no other defects in Mendoza's sentence. Id.

Petitioner filed a notice of appeal in the trial court on November 22, 2005, and an application for leave to appeal the denial of his motion to the Third Department on February 6, 2006. Dkt. No. 27, Ex. E. In a letter dated February 16, 2006, the Appellate Division advised Mendoza that although he referenced his motion for post-conviction relief and the decision and order denying the motion in his submission to the court, "those documents are not included with [petitioner's] motion papers." Id. at Ex. F. The court asked Mendoza to provide copies of those documents, and advised him that "[u]pon receipt of the documents requested, you will be further advised as to the date your application for permission to appeal to this court will be marked returnable before a justice of this court." Id.

### B. Proceedings in This Court

Petitioner filed a Petition for a writ of habeas corpus on October 22, 2004. See Dkt. No. 1. On January 14, 2005, the Office of the Attorney General for the State of New York, acting on Respondent's behalf, filed a response and memorandum of law in opposition to the Petition, along with the relevant state court records. See Dkt. Nos. 6-7.[3]

On June 13, 2005, Mendoza filed a motion to stay his petition pending exhaustion of the March 2005 motion. Dkt. No. 10. Respondent filed a letter brief opposing the stay on July 15, 2005. Dkt. No. 14. On August 3, 2005, Petitioner filed a reply. Dkt. No. 15. Petitioner's motion to stay was granted on October 28, 2005. Dkt. No. 16.

---

[3] The state court records were returned to the Attorney General on August 15, 2007 after the case was statistically closed. See Dkt. No. 20. The Attorney General electronically filed those records on July 3, 2008. See Dkt. Nos. 29-32.

Pursuant to an Order dated February 8, 2007, Mendoza's case was deemed closed for statistical purposes only. Mendoza was advised that the case would be re-opened and restored to the court's docket "[a]t any time in the future" at Mendoza's request. Dkt. No. 19.

In a letter filed March 24, 2008[4], Mendoza asked that his Petition be restored to the active docket. Dkt. No. 21. He did not file a motion to amend his habeas petition to include the claims raised in the March 2005 Motion. The case was re-opened on April 17, 2008, and Respondent was directed to file a supplemental response and relevant state court records. On May 30, 2008, the Attorney General's Office, acting on behalf of Respondent, complied with that order. Dkt. Nos. 25-28.

## II.     Discussion

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in state court only if the adjudication of the claim: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[5] Hawkins v. Costello, 460 F.3d 238, 242 (2d Cir. 2006),

---

[4] The letter is dated March 19, 2006. In light of the fact that the case was not statistically closed until February 8, 2007, and in absence of evidence to the contrary, the Court assumes that the 2006 date is a typographical error.

[5] It should be noted that "clearly established federal law" in this context "refers only to the holdings of the Supreme Court." Rodriguez v. Miller, 499 F.3d 136, 140 (2d Cir. 2007), (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)), cert. denied 128 S. Ct. 1655 (2008).

cert. denied 127 S. Ct. 1267 (2007); DeBerry v. Portuondo, 403 F.3d 57, 66 (2d Cir.2005) (citing 28 U.S.C. § 2254(d)), cert. denied, 546 U.S. 884 (2005).  AEDPA also requires that in any such proceeding "a determination of a factual issue made by a State court shall be presumed to be correct [and][t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also DeBerry, 403 F.3d at 66; Boyette v. LeFevre, 246 F.3d 76, 88 (2d Cir. 2001).

A state court decision violates the "contrary to" clause of section 2254(d)(1) when it "reaches a result opposite to the one reached by the Supreme Court on the same question of law or arrives at a result opposite to the one reached by the Supreme Court on a 'materially indistinguishable' set of facts." Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)). A federal habeas court may only grant the writ under the "unreasonable application" clause of the section when the state court's decision "identifies the correct rule of law but applies that principle to the facts of the petitioner's case in an unreasonable way." Earley, 451 F.3d at 74 (citing Williams, 529 U.S. at 413).  A federal court engaged in habeas review is not charged with determining whether the state court's determination was merely incorrect or erroneous, but instead whether such determination was "objectively unreasonable." Williams, 529 U.S. at 409; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).  Objectively unreasonable means " 'some increment of incorrectness beyond error' " is required in order to grant a federal habeas application. Earley, 451 F.3d at 74 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)).

### B. Cruel and Unusual Punishment

Mendoza argues, as he did in the state courts, that his sentence is cruel and unusual in violation of the Eighth Amendment of the Constitution. Pet. at 4. Mendoza argued on direct appeal that his sentence was "harsh and severe" because it was disproportionate to the crimes for which he was convicted. Dkt. No. 29, Ex. A at 11 ("The basic problem here is one of proportionality."). The Appellate Division modified his sentences, ordering them to run concurrently, based upon Mendoza's young age, the absence of prior arrests or convictions aside from a first degree attempted assault to which he pleaded guilty while the drug charges were pending, the absence of violence in the drug offenses themselves, and the fact that two of the drug possessions occurred within thirty minutes and all three charges involved the same informant. Mendoza, 752 N.Y.S.2d at 438.

Mendoza also claimed that his sentence was cruel and unusual in his first section 440.20 motion. Under New York law, however, a movant may not bring a claim in a CPL § 440.20 motion that was previously adjudicated by the Appellate Division. See CPL § 440.20 (2). The trial court held that his claim had been adjudicated on the merits within the meaning of CPL § 440.20(2) based upon the Appellate Division's reduction of Mendoza's sentence in the interest of justice. The court also ruled that, if it were to consider the claim, there was no basis to further reduce Mendoza's sentence in the interest of justice. Dkt. No. 29, Ex. J. The Appellate Division's decision, entitled to AEDPA deference, was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

The Eighth Amendment is applicable to the states through the due process clause of the Fourteenth Amendment and prohibits the infliction of "cruel and unusual punishments." U.S.

CONST. AMEND. VIII. In the context of noncapital cases, the Eighth Amendment forbids only extreme sentences which are "grossly disproportionate" to the crime of conviction. Lockyer v. Andrade, 538 U.S. 63, 72-73 (2003); Ewing v. California, 538 U.S. 11, 20-21 (2003); see also Harmelin v. Michigan, 501 U.S. 957, 994 (1991) ("Proportionality review is one of several respects in which we have held that 'death is different,' and have imposed protections that the Constitution nowhere else provides. We would leave it there, but will not extend it further.") (internal citations omitted). The prohibition on sentences that are grossly disproportionate is "applicable only in the 'exceedingly rare' and 'extreme' case." Lockyer, 538 U.S. at 73 (quoting Harmelin, 501 U.S. at 1001). A sentence of imprisonment that is "within the range prescribed by state law" is not cruel and unusual punishment in the constitutional sense. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Gary v. Conway, No. 06-CV-248, 2007 WL 2071744, at *7 (N.D.N.Y. Jul. 17, 2007); Mayerhofer v. Bennett, No. 02-CV-0074, 2007 WL 1624767, at *7 (N.D.N.Y. June 6, 2007). The Supreme Court has held that, for offenses less than manslaughter, sentences longer than twenty-five (25) years are not grossly disproportionate. See Staubitz v. Lord, 03-CV-0671, 2006 WL 3490335, at *2 (E.D.N.Y. Dec. 1, 2006) (citing Ewing v. California, 538 U.S. 11 (2003) (25 years to life for grand theft) and Harmelin, 501 U.S. 957 (1991) (life in prison without the possibility of parole for cocaine possession)).

      Mendoza was convicted of three separate counts of third degree criminal possession of a controlled substance, a class B felony. The trial court was authorized, at the time of Mendoza's conviction and sentencing, to sentence him to a maximum indeterminate term of eight and one-third to twenty-five years in prison. N.Y. PENAL LAW §§ 70.00(2)(b), (3)(b). Although consecutive sentences were appropriate under New York law because Mendoza possessed

narcotics on three separate and distinct occasions,[6] the Appellate Division nonetheless modified Mendoza's sentences to run concurrently. And while Mendoza's modified sentence represents the maximum term permissible for each crime, the sentence does not exceed the maximum. The sentence imposed was plainly within the limits authorized by statute, and was not grossly disproportionate to the crime of conviction. See Hutto v. Davis, 454 U.S. 370, 373-75 (1982) (per curiam) (rejecting Eighth Amendment claim where petitioner was sentenced to serve forty years in prison and ordered to pay a $20,000 fine for possession and distribution of approximately nine ounces of marijuana); Munoz v. Lacy, No. 93-CV-2180, 1996 WL 1086217, at *3 (E.D.N.Y. Sept. 3, 1996) (rejecting Eighth Amendment claim where petitioner's sentence of six years to life for selling cocaine was within statutory limits). This claim is thus denied.

### C. The Claims in Mendoza's March 2005 Motion

In his March 2005 motion, Mendoza claimed that his sentence violated equal protection and due process because, under the Drug Law Reform Act, defendants sentenced after its enactment receive lesser sentences than Mendoza. Dkt. No. 27, Ex. A. Mendoza requested, and was granted, a stay of his pending federal habeas petition on October 28, 2005 to fully exhaust this claim. Dkt. No. 16. In the Order granting the stay, Mendoza was instructed that within thirty days of the resolution of the state court proceedings, he "must file a motion for leave to amend his petition to set forth the newly exhausted claims" along with a proposed amended petition and a copy of the state court's decision disposing of the newly exhausted claims if he wanted them to be considered by this Court. Id. at 5-6. Although Mendoza asked that his case be restored to the active docket in a one-page letter filed March 24, 2008 (Dkt. No. 21), he has not filed any motion

---

[6] See N.Y. PENAL LAW § 70.25.

to amend his petition to include the claims presented in the March 2005 motion. Accordingly, these claims have not been properly raised in this proceeding. See, e.g., Middlebrooks v. Conway, No. 05-CV-0004F, 2007 WL 2437118, at *4 n. 7 (W.D.N.Y. Aug. 21, 2007) ("Because petitioner did not specifically raise in the amended petition the claims raised on direct appeal, as he was specifically directed to do if he wished them to be considered in this proceeding, the Court finds that said claims are not raised in this proceeding and that petitioner has not asked that he be allowed to raise them now.").

Even assuming Mendoza now moved to amend his petition to include the claims in his March 2005 motion, the motion would likely be denied because Mendoza failed to fully exhaust those claims. An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. Baldwin v. Reese, 541 U.S. 27, 29 (2004); Fama v. Comm'r. of Corr. Servcs., 235 F.3d 804, 808 (2d Cir. 2000); Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).

Mendoza sought leave to appeal the denial of the March 2005 motion in the Appellate Division, but he never perfected his application for leave to appeal. In a letter dated February 16,

2006, the Appellate Division instructed Mendoza to provide the court with copies of his section 440.20 motion and the trial court's decision denying it. Dkt. No. 27, Ex. F. The Appellate Division further advised Mendoza that until those documents were received, the case would not be marked returnable before a justice of that court. Id. There is no evidence that Mendoza complied with that request, and it does not appear that the Appellate Division has ruled on his application for leave.[7] Since it appears that Mendoza's application for leave to appeal is still pending,[8] any claims raised in the March 2005 motion would therefore be unexhausted. See, e.g. Polanco v. Ercole, No. 06 Civ. 1721, 2007 WL 2192054, at *7 (S.D.N.Y. Jul. 31, 2007) (a challenge that a sentence violated the United States Constitution was unexhausted where no such claim was fairly presented to the state's highest court); King v. Cunningham, 442 F. Supp. 2d 171 (S.D.N.Y. 2006)(claims raised in a CPL § 440.20 motion were unexhausted because petitioner failed to seek leave to appeal the denial of his motion).

While Respondent argues that, to the extent that the claims in Mendoza's March 2005 motion are before this Court, they should be deemed exhausted but procedurally defaulted (Supp.

---

[7] Respondent states that, according to the Appellate Division's court clerk, Mendoza did not comply with the Appellate Division's request for documents and "has made no further communications with the Appellate Division with regard to his application." Dkt. No. 25, Respondent's Supplemental Memorandum of Law ("Supp. Mem."), at 2.

[8] The rules of the Appellate Division, Third Department, provide that where there is an unreasonable delay in prosecuting an appeal or proceeding, the respondent may move to dismiss the appeal for lack of prosecution. 22 N.Y. Comp. Codes R. & Regs. §800.9(d). No such dismissal motion was made. Rule 800.12 provides that a civil appeal or proceeding "shall be deemed to have been abandoned where the appellant or petitioner shall fail to serve and file a record and brief within nine months after the date of the notice of appeal[.]" Id. at § 800.12. There is no reference in this rule, or in any other rule of the Third Department, to a criminal appeal being deemed abandoned and dismissed.

Mem. at 3-5), this Court disagrees. Although it is unclear whether the Appellate Division would permit it, Mendoza may be able to comply with that court's request and supply the appropriate materials to permit it to consider his application for leave to appeal the denial of his March 2005 motion. Alternatively, Mendoza could raise the claims anew in a successive section 440.20 motion in County Court because there is no time limit within which to file such a motion, and more than one motion to set aside a sentence is permissible so long as the ground or issue raised was not previously determined on the merits in a direct appeal. CPL § 440.20(1)(2).

Since Mendoza raised his Reform Act claims in a prior section 440.20 motion, an attempt to return to state court to raise the issue again so that he could exhaust his remedies would be covered by section 440.20(3), which provides that a court may deny a motion to set aside a sentence when the ground or issue raised was previously determined on the merits in a prior motion or proceeding other than a direct appeal, but is not required to do so, and may exercise its discretion to consider a successive motion in the interest of justice. CPL § 440.20(3).[9]

In light of the foregoing, while it is doubtful that the state courts would consider a successive section 440.20 motion raising the same Reform Act claims that one court has already rejected on the merits, it cannot be said with certainty that Mendoza could not return to state court. The Reform Act claims would not, therefore, be procedurally defaulted. See Saracina v. Artus, No. 04-CV-521S, 2007 WL 2859722, at *7 (W.D.N.Y. Sept. 26, 2007) (under section 440.20(3), a state court has discretion to consider a motion in the interest of justice even where

---

[9] For example, to the extent that Mendoza reiterated his claim that the sentence was cruel and unusual punishment in his March 2005 motion, it was denied because the court found that it had already been determined on the merits. See Dkt. No. 27, Ex. D ("Additionally, any claim that defendant makes that his sentence is cruel and unusual or excessive has already been determined on the merits and is therefore barred by CPL 440.20(3).").

the same issue was determined on the merits in another proceeding other than a direct appeal); Reyes v. Phillips, 02 Civ. 7319, 2005 WL 2173812, at *5 (S.D.N.Y. Sept. 6, 2005) (because sections 440.10(3) and 440.20(3) were discretionary, the court was not prepared to hold that petitioner could not return to file a second motion under either section).

In addition, even if Mendoza could demonstrate "good cause" for failing to exhaust the claims in state court, despite the prior issuance of a stay for that purpose, he cannot demonstrate that the unexhausted claims are not "plainly meritless." Rhines v. Weber, 544 U.S. 269, 275 (2005). That is especially true since "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." White, 969 F.2d at 1383. Additionally, courts have the power under AEDPA to review and deny on the merits any unexhausted claims included in a habeas petition if they are "plainly meritless" (Rhines, 544 U.S. at 277) or "patently frivolous." McFadden v. Senkowski, 421 F. Supp.2d 619, 621 (W.D.N.Y. 2006); Wheeler v. Phillips, No. 05-CV-4399, 2006 WL 2357973 at *5 (E.D.N.Y. Aug. 15, 2006); see Duncan v. Walker, 533 U.S. 167, 183 (2001) (stating in *dicta* that "the AEDPA gives a district court the alternative of simply denying a petition containing unexhausted but nonmeritorious claims."). In this case, even if Mendoza's unexhausted claims were properly before the Court, they would be dismissed on the merits under either standard, notwithstanding his apparent failure to exhaust the claim in the state courts. See also Slack v. McDaniel, 529 U.S. 473, 489 (2000) ("Once the petitioner is made aware of the exhaustion requirement, no reason exists for him not to exhaust all potential claims before returning to federal court. The failure to comply with an order of the court is grounds for dismissal with prejudice.") (citing Fed. R. Civ. Proc. 41(b)).

The Reform Act replaced New York's indeterminate sentencing scheme for drug offenses

with a determinate sentencing system and reduced mandatory minimum sentences for nonviolent drug offenders. See People v. Utsey, 855 N.E.2d 791 (N.Y. 2006). The Reform Act does not, however, apply retroactively to defendants who were already convicted of class B, C, D, and E felonies and sentenced when it went into effect. Id.[10]; see United States v. Williams, 462 F. Supp. 2d 342, 343 (E.D.N.Y. 2006) ("With limited exceptions for A-I and A-II felons, the ameliorative effects of the Reform Act are prospective only. The reduced maximum sentences do not apply to defendants who committed their crimes prior to the effective date of the statute, January 13, 2005.") (citing Utsey). As the state court found, Mendoza was convicted and sentenced in 2000, and his sentence was later modified by the Appellate Division in 2002 - well before the effective date of the Reform Act.

Moreover, New York courts have found that the Reform Act does not violate equal protection or due process even though it permits individuals convicted of class A-I and A-II drug felonies prior to the effective date of the law to petition for re-sentencing while not providing the same opportunity to those convicted of class B felony drug offenses, like Mendoza, because "there is a rational basis for distinguishing between class A-I and class B felony drug offenders for retroactivity purposes." People v. Pauly, 799 N.Y.S.2d 841 (N.Y. App. Div., 3d Dept. 2005). As the Appellate Division further explained, "it would be rational for the Legislature to allow retroactivity and extend the greatest relief to those facing the most stringent sentences while, at the same time, providing different retroactive relief to class B felony drug offenders by, among

---

[10] The Reform Act does include "ameliorative provisions designed to afford distinct sentencing relief to defendants who committed their crimes prior to its effective date," such as an additional "merit time reduction" and early parole termination. See Utsey, 855 N.E.2d at 794.

other things, granting eligibility to earn additional merit time reductions." Id.; see also Williams, 462 F. Supp. 2d at 347 n.5 (stating that extending re-sentencing relief "to those facing the harshest of the Rockefeller law sentences is consistent with the spirit of the statute even as it protects state courts from an administratively burdensome rush of petitions for resentencing."); see generally, M.L.B. v. S.L.J., 519 U.S. 102, 115-16 (1996) ("Absent a fundamental interest or classification attracting heightened scrutiny, . . . the applicable equal protection standard is that of rational justification . . ." (internal quotations omitted)), Patterson v. New York, 432 U.S. 197, 201 (1977) ("[P]reventing and dealing with crime is much more the business of the States than it is of the Federal Government, . . . and . . . we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States."); Pennsylvania v. Ashe, 302 U.S. 51, 55 (1937) ("Save as limited by constitutional provisions safeguarding individual rights, a State may choose means to protect itself and its people against criminal violation of its laws. The comparative gravity of criminal offenses and whether their consequences are more or less injurious are matters for its determination.").

In sum, Mendoza's unexhausted March 2005 motion claims are not currently pending before the Court because Mendoza has not moved to amend the Petition to include them. In any event, the claims are plainly meritless because Mendoza's sentence is within the statutory limits in place at the time of his conviction and sentence. Thus, even if the March 2005 motion claims had been exhausted and properly before the Court, the claims present no ground for federal habeas relief.

## III. Conclusion

**WHEREFORE**, after reviewing Mendoza's submissions and the relevant law, and for

the reasons stated herein, it is hereby

 **ORDERED,** that Mendoza's Petition for a writ of habeas corpus (Dkt. No. 1) is **DENIED and DISMISSED in its entirety;** and it is further

 **ORDERED**, that no Certificate of Appealability shall issue with regard to any of Petitioner's claims; and it is further

 **ORDERED,** that the Clerk serve a copy of this Order on the parties.

 **IT IS SO ORDERED.**

DATED: August 06, 2008
    Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge